IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVORA RUBIO AND ROBERT RUBIO, | CASE NO. 1: 13-cv-0027-LJO-BAM |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING PLAINTIFFS' MOTION TO REMAND AS MOOT; AND VACATING THE INITIAL SCHEDULING CONFERENCE |
| vs. | (Docs. 10 & 13). |
| LARA JEANINE ARNDAL, M.D., JOHNSON & JOHNSON, and ETHICON, INC., | |
| Defendants. | |

## I.   INTRODUCTION

In this pelvic mesh products-liability and medical malpractice action, Defendants Johnson & Johnson and Ethicon, Inc. ("Defendants")[1] filed a Motion to Stay the above-entitled action pending a decision by the Judicial Panel on Multidistrict Litigation ("JPML") regarding the transfer of this case to MDL No. 2327 in the Southern District of West Virginia, which Plaintiffs have opposed. (Doc. 10). On January 23, 2013, Plaintiffs Evora and Robert Rubio ("Plaintiffs") filed a Motion to Remand this case to the Superior Court of California, Inyo County, where it was originally filed. (Doc. 13). Plaintiffs oppose the motion to stay, and argue that the Court should first decide their motion to remand. (Doc. 15). The Court deemed the matters suitable for decision without oral argument pursuant to Local Rule

---

[1]   Defendant Lara Jeanine Arndal has not been served in the underlying state court action.  (Doc. 1 at 2).

1

230(g), and vacated the hearing scheduled for March 1, 2013. Having reviewed all of the parties' arguments and relevant legal authority, the Court **DENIES** Plaintiffs' Motion to Remand as **MOOT** and **STAYS** further proceedings in this action pending a decision by the JPML. (Docs. 10, 13).

## II.  BACKGROUND

### A.  Allegations in Plaintiffs' Complaint

On November 26, 2012, Plaintiffs filed a complaint in the Superior Court of California, Inyo County, alleging complications related to Mrs. Rubio's pelvic mesh implantation which was designed, manufactured, marketed and distributed by Defendants Ethicon and Johnson & Johnson. (*See* Complaint ("Compl.") ¶ 40, Doc. 1-2, Ex. A). Plaintiffs allege that as a result of the implantation, Mrs. Rubio "suffered and will continue to suffer serious bodily injuries, including pain, discomfort, pressure, difficulty voiding urine, and continued incontinence." (Comp. ¶ 41). In addition, Mrs. Rubio alleges that she has suffered or will suffer "great mental and physical pain and permanent disability, medical and related expenses, and lost earnings." (Compl. ¶ 51). On January 7, 2013, Defendants removed this action to federal court on the basis of fraudulent misjoinder. Dr. Lara Arndal, a California citizen, did not join the removal.

### B.  MDL Proceedings and Procedural Background

Pelvic mesh products are the subject of referral to the multi-district litigation ("MDL"). On February 7, 2012, the JPML issued a Conditional Transfer Order centralizing all actions related to pelvic mesh products in the Southern District of West Virginia before the Honorable Joseph R. Goodwin in MDL No. 2327 for coordinated or consolidated pretrial proceedings. There are more than 250 cases now pending in the Ethicon MDL, including several originating in the Central District of California alleging amounts in controversy in excess of $75,000. *See, e.g.*, Transfer Orders entered in *Tyler v. Ethicon Inc. et al.*, No. 2:11-cv-09525 (C.D. Cal. Feb. 22, 2012); *De La Torre et al. v. Johnson & Johnson Inc. et al.*, No. 2:12-cv-01620 (C.D. Cal. Mar. 16, 2012); *Evans v. Ethicon, Inc. et al.*, No. 2:12-cv-02646 (C.D. Cal. Apr. 18, 2012); *Holmes v. Ethicon Inc. et al.*, No. 2:12-cv-02647 (C.D. Cal. Apr. 18, 2012).

On January 9, 2013, Defendants filed a letter with the JPML identifying Plaintiffs' case as "tag-along" action to MDL No. 2327. On January 11, 2013, the MDL Panel issued an order conditionally transferring Plaintiffs' case to MDL No. 2327. Doc. 10-2, Ex. D.  Two weeks later, Plaintiffs' filed a

1  motion to vacate the conditional transfer order in the MDL. (MDL No. 2327, Doc. 788). The MDL has
2  scheduled a hearing to consider Plaintiffs' opposition to the transfer order for March 21, 2013 in San
3  Diego, California. (MDL No. 2327, Doc. 788 at 19).
4        Defendants now move for a stay of the present action arguing that pursuant to 28 U.S.C. §1407,
5  this case will likely be transferred to the MDL proceedings in the Southern District of West Virginia
6  captioned, *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, 2012 WL 432533
7  (J.P.M.L. Feb 7, 2012).

### III.   ANALYSIS

#### A.   Legal Standard

A district court has the "power to stay proceedings" as part of its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A district court's decision to grant or deny a stay is a matter of discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). In determining whether to stay an action, courts must weigh competing interests that will be affected by the granting or refusal to grant a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Among these competing interests are (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* (citing *Landis*, 299 U.S. at 254-55).

Often, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system. *See* 28 U.S.C. § 1407; *see also*, *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360-61 (C.D.Cal.1997) (staying action pending transfer decision by MDL panel after finding that judicial resources would be conserved and defendant would not be prejudiced).

#### B.   Defendants' Arguments for Staying the Case

Defendants argue that Plaintiffs' case should be stayed for several reasons. First, Defendants argue that "[t]he general rule is for a federal court to defer ruling on pending motions to remand in MDL

3

litigation until after the JPMDL . . . has transferred" the case to the MDL court. *Michael v. Warner-Lambert Co.*, No. 03cv1978 DMS (RBB), 2003 U.S. Dist. LEXIS 21525, at *4 (S.D. Cal. Nov. 20, 2003). According to Defendants, the MDL court is best situated to determine not only Plaintiffs' motion to remand, but also other overlapping jurisdictional issues triggered by claims asserted against non-diverse defendants in this and other pelvic mesh product lawsuits.

Second, judicial efficiency and consistency dictate that the MDL court should determine the jurisdictional issue in this case and other mesh cases as they arise. Defendants explain that the jurisdictional question raised in Plaintiffs' motion to remand: the fraudulent misjoinder of a non-diverse defendant, is currently pending before Judge Goodwin in an identical Ethicon MDL case removed to the Central District of California. *See Flores et al v. Ethicon Inc., et al.*, Case CV 12-04096 MMM (VBKx), (Doc. 10, Ex. 2). Therefore, any ruling by this Court on an identical jurisdictional question could produce an inconsistent ruling. Further, this specific jurisdictional question has the potential to arise repeatedly in different courts again with possibly inconsistent results. If different courts each consider the jurisdictional challenges independently, not only will multiple courts be doing the work a single court—the MDL court—could do, but also Defendant and its co-defendants will be subject to potentially inconsistent pretrial rulings.

Finally, Defendants respond to Plaintiffs' argument that a stay prior to a ruling on the motion to remand will cause a protracted delay. Defendants argue that a delay is not a compelling reason to forgo a long line of case law holding that stays pending transfer to the MDL court further the interest of judicial economy.

### C. Plaintiffs' Arguments Against the Stay

Plaintiffs reply that their Motion to Remand should be heard before the Court rules on Defendants' Motion to Stay. According to Plaintiffs, subject matter jurisdiction is the threshold determination in any case brought to federal court, and as such the Court should determine jurisdiction prior to ruling on any other motions. (Doc. 15). In determining whether to rule on the motion to remand first, Plaintiffs argue that the court should follow the *Conroy* three-step approach. *Conroy v. Fresh Del Monte Product, Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D. Cal. 2004) (citing *Meyers v. Bayer*

*AG*, 143 F.Supp.2d 1044).[2]

The *Conroy* three step approach dictates that first, the Court should give preliminary scrutiny to the merits of the motion to remand. Second, if the jurisdictional issue appears factually or legally difficult, the Court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been transferred to the MDL. Finally, if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the Court should stay the action. *Id.* at 1053.

Plaintiffs also argue that in the event that the Court decides to first rule on Defendants' Motion to Stay, Defendants' motion should be denied for several reasons. First, Plaintiffs' argue that a stay will not serve judicial economy because "the same degree of judicial resources must be expended" in either the transferor court or the transferee court. According to Plaintiffs, there would be no savings in terms of judicial effort by abdicating the present question of jurisdiction to the Southern District of West Virginia. (Doc. 15 at 8).

Second, staying the present case would require the MDL court to interpret California state law. Plaintiffs contend that this California federal court is in a better position to interpret the nuances of California state law.

Finally, Plaintiffs assert that prejudice to Plaintiffs would result if stay is granted because waiting on the MDL court to determine the remand issue will result in a protracted delay.

### C. Plaintiffs' Case Should Be Stayed

Under the circumstances, all the relevant factors point towards staying these proceedings. Contrary to Plaintiffs' arguments, Plaintiffs' case should be stayed for several reasons. As detailed below, staying Plaintiffs' case pending the possible transfer of the case to the MDL would promote judicial economy. Moreover, granting the motion to stay avoids the possibility of inconsistent rulings, which is particularly important here, because a decision to remand is not subject to appeal. 28 U.S.C. 1447(d). Finally, Plaintiffs have not shown that a stay would result in a prejudicial extended delay.

---

[2] Only some district courts within the Ninth Circuit follow the test set forth in *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001), which indicates that the court should consider a motion to stay prior to a motion to remand "only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred [to an MDL venue]. . . ." Under this approach, it would be appropriate to address the motion to remand prior to the motion to stay when the jurisdictional issue is straightforward.

5

### *i. Conroy Three-Step Approach*

Plaintiffs argue that the merits of their motion to remand should be addressed before a motion to stay is granted. While "generally, jurisdiction is a preliminary matter that should be resolved before all others," *Leeson v. Merck & Co., Inc.*, 2006 U.S. Dist. LEXIS 3096, 2006 WL 3230047, *2 (E.D.Cal. Jan. 27, 2006), this Court has held that "the calculus changes somewhat when deference to a MDL court will further the uniformity, consistency, and predictability in litigation that underlies the MDL system." *Leeson*, 2006 U.S. Dist. LEXIS 3096, 2006 WL 3230047, *2 (quoting *Conroy v. Fresh Del Monte Produce Inc.*, 325 F. Supp. 2d 1049, 1053 (N.D.Cal.2004)). "In deciding whether to rule on the motion to remand prior to a motion to stay, Courts consider whether the remand motion raises issues likely to arise in other actions pending in the MDL transferee court." *Conroy*, 325 F. 2d at 1053.

Application of the three-step *Conroy* approach weighs in favor of staying this case. Although the Court declines to express an opinion on the ultimate merits of the motion to remand, having given the motion a preliminary assessment, the Court cannot say it is clear that removal was improper. In their Motion to Remand, Plaintiffs ask the Court to remand this case on the grounds that there is no diversity jurisdiction because Dr. Lara Arndal is a California resident. Defendants respond that removal is proper under the doctrine of "fraudulent misjoinder"[3] because the claims against Dr. Arndal are wholly different than the claims against Defendants Johnson & Johnson and Ethicon, Inc.

At a minimum, Plaintiffs' Motion to Remand reveals that it is factually and legally complex and cannot easily be disposed of by this Court. Most notably, the Eastern District as well as other courts are split on the validity of the "fraudulent misjoinder doctrine" in the Ninth Circuit.[4] *Compare Sutton v. Davol, Inc.*, 251 F.R.D. 500, 503 (E.D. Cal. 2008) (applying fraudulent misjoinder doctrine and severing claims against procedurally misjoined defendants) *with Osborn v. Metropolitan Life Ins. Co.*,

---

[3] The doctrine of "fraudulent misjoinder" was first articulated by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corporation,* 77 F.3d 1353 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc*. 204 F.3d 1069, 1072 (11th Cir. 2000).

[4] Application of the "fraudlent misjoinder" doctrine throughout the Ninth Circuit is heavily questioned. *See Caouette v. Bristol-Myers Squibb Co.*, 2012 U.S. Dist. LEXIS 113980 (N.D. Cal. Aug. 10, 2012) ("The Ninth Circuit, for example, has acknowledged the doctrine in an unpublished decision predating January 1, 2007, but has not expressly adopted it.).

341 F.Supp.2d 1123 (E.D. Cal. 2004) (refusing to apply the fraudulent misjoinder doctrine and granting the plaintiff's motion to remand); *see also Caouette v. Bristol-Myers Squibb Co.*, 2012 U.S. Dist. LEXIS 113980 (N.D. Cal. Aug. 10, 2012) ("The Ninth Circuit, for example, has acknowledged the [fraudulent misjoinder] doctrine in an unpublished decision predating January 1, 2007, but has not expressly adopted it."). Based on this preliminary assessment, it is not obvious that the removal was improper. What is obvious, however, is that the "fraudulent misjoinder" jurisdictional question raised in Plaintiffs' motion to remand is both factually and legally difficult.

Second, the identical jurisdictional issue raised by Plaintiffs' motion to remand has already been raised in a pending MDL proceeding. *See, e.g.*, *Flores et al v. Ethicon Inc., et al.*, Case CV 12-04096 MMM (VBKx). Thus, under the rationale of *Conroy*, because the issue is both factually and legally difficult and is currently pending before the MDL, a stay would be warranted.

### ii.  *Risk of Inconsistent Rulings*

A stay is also warranted in this case for three additional reasons. First, absent a stay, there would be a significant risk of inconsistent rulings given the number of cases already in the MDL that potentially raise the same jurisdictional question. The question of whether Plaintiffs' in state doctor is a proper defendant in these product defect cases should be decided by one court. The result otherwise would mean potential inconsistency in judicial rulings. Defendants have identified at least one case in this particular MDL involving identical fraudulent misjoinder issues raised in Plaintiffs' remand motion. Since at least one case in which a Plaintiff's doctor is a defendant has been transferred to the MDL, and since at least four cases from the Central District of California in which Johnson & Johnson and Ethicon are defendants have been stayed pending the transfer decision by the JPML, the weight of authority suggests that granting a stay in order to avoid inconsistent rulings under these circumstances is both routine and advisable. *See, e.g., Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 809 (N.D. Cal. 1998) ("Courts frequently grant stays pending a decision by the MDL Panel regarding whether to transfer a case.").

### iii.  *Judicial Economy*

Second, judicial resources will be conserved by staying this matter and deferring consideration of the remand motion to the MDL court. This is a newly created MDL, and it is quite likely that the

1 fraudulent misjoinder issue will not be unique to this case. For example, a similar doctrine, fraudulent
2 joinder, has been raised repeatedly in prior MDL medical malpractice/products liability proceedings.
3 *E.g., Johnson v. Merck & Co., Inc.*, Case No. C07-0067 WHA, 2007 U.S. Dist. LEXIS 21444, 2007 WL
4 754882, at *2 (N.D. Cal. Mar. 8, 2007) (noting, in Vioxx products liability case, that "a number of the
5 actions from California have faced the same issue raised here by plaintiff: whether the distributor
6 defendants were fraudulently joined to defeat diversity"). Having individual courts decide an issue likely
7 to be raised in multiple proceedings would be an inefficient use of judicial resources.

### *iv.  Balance of Hardships*

Finally, in weighing the parties' competing interests, the Court does not find that any substantial prejudice would result to Plaintiffs from a stay. Plaintiffs' concerns that a stay of the case will result in a significant delay are unfounded. The JPML has already issued a conditional transfer order and Plaintiffs' opposition to the transfer is set for a hearing before the JPML on March 21, 2013. This suggests that Plaintiffs' case will not idle on the MDL's docket. Further, Defendants would be prejudiced if this Court were to decide Plaintiffs' remand motion before the MDL determines whether to transfer this case to the MDL proceedings. If this Court were to deny the motion to remand, the MDL court might nonetheless revisit the issue upon transfer, thus forcing Defendants to relitigate the issue; if the Court were to grant the motion, and the MDL court ultimately decided in other similar cases that removal was proper, Defendants would be prejudiced by having to litigate this case in state court instead of before the MDL court. *Leeson*, 2006 U.S. Dist. LEXIS 3096 at *4. A stay will not inhibit a judicial determination of the "fraudulent misjoinder" issues if the case is transferred. If it is not, Plaintiffs may renew their remand motion here. Thus, the Court finds that the potential of hardship to Defendants outweighs the potential of prejudice and delay to Plaintiffs.

In light of all of the above, the Court finds good cause to **GRANT** Defendants' Motion to Stay. If the JPML does not transfer this case to the MDL court, then Plaintiffs may renew their Motion to Remand before this Court at that time.

### IV.  CONCLUSION

For the reasons sets forth above, the Court:

1.  **GRANTS** Defendants' Motion to Stay. (Doc. 10). This action is HEREBY

STAYED until the MDL Panel issues its order on the pending motion to transfer.

2. **ORDERS** the parties to file a joint status report 60 days after the filing date of this Order detailing the status of the motion before the MDL Panel, and every 60 days thereafter until the MDL Panel issues its decision concerning the transfer of this action.

2. **DENIES** Plaintiffs' Motion to Remand as MOOT. (Doc. 13).

3. **VACATES** the INITIAL SCHEDULING CONFERENCE set for April 17, 2013 in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.

IT IS SO ORDERED.

Dated: __March 1, 2013__              __/s/ **Barbara A. McAuliffe**__
                                      UNITED STATES MAGISTRATE JUDGE